**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| JOYCE PETTYE, | ) | |
| | ) | |
| Plaintiff, | ) | Case Number: |
| | ) | |
| v. | ) | |
| | ) | Judge: |
| SANTANDER CONSUMER USA, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | Magistrate: |
| | ) | |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff, JOYCE PETTYE, ("Plaintiff"), by and through her attorneys,

Christopher V. Langone and James P. Batson, complains against Defendant,

SANTANDER CONSUMER FINANCE, USA, ("Santander"), as follows:

**INTRODUCTION**

1.      In this action, Plaintiff seeks redress, individually and on behalf of a class,

under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA"), and the Illinois

Motor Vehicle Retail Installment Sales Act, 815 ILCS 375/1, *et seq*., ("IMVRISA"), for

the improper collection of finance charges and the improper disclosure of finance charges

by not including charges for a "GAP" debt-cancellation agreement in the finance charge

with respect to installment notes with an APR in excess of the GAP program's limits (in

Plaintiff's case, an program limit of 24%).

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, namely, the Truth in Lending Act, 15 U.S.C. § 1640(e). Supplemental jurisdiction exists over the state-law claims.

3.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) & (2) because Santander is subject to personal jurisdiction in this district and thus resides in the district (*see* 28 U.S.C. § 1391(c)(2)), and because a substantial part of the events giving rise to this action occurred in this judicial district.

## PARTIES

4.      Plaintiff is an individual domiciled in Chicago, Illinois.

5.      Defendant, Santander, is an Illinois corporation with its principal place of business located at 1601 Elm Street, Suite 800, Dallas, Texas.

## CAUSE OF ACTION

6.      On March 5, 2015, Plaintiff went to Al Piemonte Super Car Outlet, a car dealership located in Northlake, Illinois, for the purpose of purchasing a vehicle for her personal use.

7.      After conferring with members of the sales staff at the dealership, Plaintiff decided to purchase a used 2012 Ford Focus a price of $13,000.00.

8.      In conjunction with this purchase, Plaintiff executed a Retail Installment Contract ("RIC"). A copy of the RIC is attached as Exhibit A.

9.      Santander is the holder of the RIC.

10.     Santander has received payments toward the vehicle that is the subject of the RIC.

11.     Santander has collected finance charges pursuant to the RIC.

12.     Under the terms of the RIC, Plaintiff is required to make 72 monthly payments of $385.90 at an annual percentage rate of 27.06%.

13.     The "Amount Financed" disclosed on the RIC is $13,537.00.

14.     The "Amount Financed" included the cash purchase price of the vehicle, and other charges.

15.     The "Finance Charge" disclosed on the RIC is $14,247.00.

16.     The "Total Sale Price," including cost of credit, was disclosed on the RIC as $29,784.80.

17.     Before consummation of the credit transaction, Plaintiff was not delivered a copy of the required TILA disclosures in a form she could keep.

18.     Before being presented with the RIC to sign, Plaintiff was not given any information regarding the "GAP" debt-cancellation addendum, and specifically the amount charged.

19.     Before being asked to sign the RIC, Plaintiff was not advised of the required TILA disclosures, orally or in writing, other than being told the amount of the monthly payments she would be obligated to make under the RIC, and the total number of such payments.

20.     Instead, when Plaintiff decided to purchase the vehicle, she was presented with a stack of documents containing signature lines marked by the letter "X."

21.     When they provided Plaintiff with the above-referenced papers, the sales staff with whom Plaintiff was conferring informed her that the papers were "her contract," and that she should "sign every signature line marked with an 'X.'"

22.     The stack of papers contained not only Plaintiff's RIC, but also a document entitled "GAP ADDENDUM." A copy of the GAP ADDENDUM is attached as Exhibit B.

23.     The document entitled "GAP ADDENDUM" purported to sell Plaintiff a debt-cancellation agreement, purportedly absolving her of liability for the unpaid balance of the RIC in the event of a total loss of the collateral (under certain circumstances).

24.     The "GAP ADDENDUM" imposed an additional charge upon Plaintiff of $895.00 (the "GAP Charge").

25.     Disclosure of the GAP Charge was not provided to Plaintiff in a form she could keep before consummation of the credit transaction.

26.     The GAP Charge was included in the "Amount Financed," and not in the "Finance Charge."

27.     The "GAP ADDENDUM" imposes "Program Limits," including a "Maximum APR" of 24.00%.

28.     The APR on the RIC exceeded the Program Limit, thus rendering the GAP ADDENDUM void and worthless, pursuant to its own terms (*See* Exclusion K).

29.     The sales staff with whom Plaintiff conferred did not inform her before providing her with documents to sign, and instructing her to sign any line marked with an "X," that the documents included the "GAP ADDENDUM."

30.     The "GAP ADDENDUM" itself did not state that the payment of the GAP Charge was voluntary, but rather stated "[a]lthough not required to do so, you elect to purchase this Addendum."

31.     The signature line of the "GAP ADDENDUM" was marked with an "X."

4

32.     Because she had been instructed to sign all lines so marked, Plaintiff signed the "GAP ADDENDUM" without understanding that she was making an additional purchase, but rather believed the document was part of the RIC.

33.     The sales staff with whom Plaintiff conferred did not inform her, before signing the RIC, that she would be presented the opportunity to purchase a GAP ADDENDUM, or that such purchase was not required and would not be a factor in the decision to extend credit.

34.     Before being given either the RIC or the GAP ADDENDUM to sign, Plaintiff was not delivered any disclosures whatsoever regarding the GAP ADDENDUM or the GAP Charge.

35.     Indeed, Plaintiff was completely unaware that she had signed the GAP ADDENDUM, or that such signature represented an additional "non-required" purchase, until she conferred with her attorneys regarding the sale due to a concern unrelated to the TILA.

36.     Had Plaintiff been provided adequate disclosures about the nature of the GAP ADDENDUM as an additional, non-required purchase with an $895.00 cost, she would not have signed the GAP ADDENDUM. The only reason Plaintiff signed the GAP ADDENDUM was because she was led to believe it was a mandatory form connected with her RIC.

37.     Because of the inadequate disclosures, Plaintiff has been saddled with so-called "gap protection" that was not only undesired, but that is worthless because the APR imposed by her RIC (27.06%) exceeds the program's maximum APR of 24%.

## FIRST CLAIM FOR RELIEF
### *Violation of the Truth in Lending Act*

38.     Plaintiff incorporates paragraphs 1-37, alleged above, into this claim for relief.

39.     The Truth in lending Act, 15 U.S.C. § 1638(b)(1) mandates timely and accurate written disclosures of financing terms, prior to consummation of a credit transaction.

40.     Regulation Z, 12 C.F.R. § 226.17(a), interpreting TILA, states in relevant part:

> *(a)    Form of disclosures*
> *(1)    the creditor shall make disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep....*

41.     Regulation Z. 12 C.F.R. § 226.18 sets forth the content of the disclosures required by TILA.

42.     The financing terms that must be accurately and timely disclosed include the "Amount Financed" and the "Finance Charge" as defined in 15 U.S.C. § 1605(a).

43.     15 U.S.C. § 1638(a)(2)(A) explains how the "Amount Financed" and "Finance Charge" shall be computed, starting with the cash price less any down payment and/or trade-in.

44.     Charges paid to a third party are excluded from the finance charge only "if the creditor does not require the imposition of the charges or the services provided and does not retain the charges." 15 U.S.C. § 1605(a).

45.     Regulation Z. 12 C.F.R. § 226.4, interpreting 15 U.S.C. § 1605, states, in pertinent part, that the finance charge "includes any charge payable directly or indirectly by the consumer as an incident to […] the extension of credit."

46.     Plaintiff's RIC lists the cash price of the vehicle as $13,000 and discloses a down payment of $2,000.00, reducing the cash price to $11,000. With amounts for GAP "insurance" ($895.00), documentary fees, and taxes, the "Amount Financed" is disclosed as $13,537.00, according to the RIC's TILA disclosure.

47.     Plaintiff's RIC discloses the "Finance Charge" as $14,247.00.

48.     Both the "Amount Financed" disclosure and the "Finance Charge" disclosures on Plaintiff's RIC are inaccurate.

49.     Plaintiff's $895.00 GAP Charge is memorialized by the aforementioned GAP ADDENDUM, which specifies that the maximum permissible APR for the GAP "Program" is 24%.

50.     Exclusion K of the GAP ADDENDUM explicitly provides that the Addendum "does not provide coverage for loss […] where the Financing Contract has an annual percentage rate (A.P.R.) in excess of the Maximum APR Limit shown on the front page of this Addendum."

51.     The Maximum APR Limit shown on the front of Plaintiff's GAP ADDENDUM in 24.00%

52.     Plaintiff's RIC has an APR of 27.06%.

53.     Defendant's "Amount Financed" TILA disclosure is not accurate, because it includes the cost of the GAP ADDENDUM, which should have been included in the "Finance Charge" pursuant to TILA due to: (1) the fact that the protection is a worthless

7

and deceptive product primarily used to pad loan transactions and improperly increase the amount financed with what is really profit, and part of the finance charge; and (2) the fact that protection was issued in connection with a loan with an APR greater than the maximum 24% APR, and is therefore worthless because it is outside of Program Limits.

54. According to Exclusion K, cited above, selling GAP protection outside of the program limits renders the GAP ADDENDUM worthless, because Plaintiff is not entitled to coverage on the Addendum for her RIC with an APR in excess of 24%.

55. Therefore, the $895.00 GAP Charge was not a charge or premium paid for debt cancellation coverage for an amount exceeding the value of the collateral, nor was it a charge or premium paid for debt suspension coverage of any type; rather, under the terms of the GAP ADDENDUM, the GAP Charge entitles Plaintiff to no coverage at all.

56. Because the GAP Charge was not a charge or premium paid for the relevant coverage, it must be excluded from the "Amount Financed" amount, and cannot be excluded from the calculation of the "Finance Charge."

57. The fact that Plaintiff's GAP ADDENDUM is worthless due to the interest rate of her RIC exceeding the maximum rate proscribed by the ADDENDUM for a recovery for loss, and the fact that Plaintiff's "GAP Charge" is nevertheless excluded from the calculation of the "Finance Charge," are apparent from the face of financing documents, specifically the RIC and the GAP ADDENDUM.

58. As an assignee of the RIC and a party to the GAP ADDENDUM, Defendant Santander had access to both Plaintiff's RIC and Plaintiff's GAP ADDENDUM.

8

59.     The failure to properly disclose the GAP Charges paid by Plaintiff and class members contributed to Plaintiff's and class members' mistaken and/or under-informed enrollment in a so-called "GAP Program" that imposed fees of hundreds of dollars but provided no actual protection.

60.     As a result, the true cost of credit was never disclosed to Plaintiff or any of the members of the proposed class in accordance with the TILA, and therefore they are entitled to damages pursuant to 15 U.S.C. § 1640.

## SECOND CLAIM FOR RELIEF
### *Violation of the Illinois Motor Vehicle Retail Installment Sales Act*

61.     Plaintiff incorporates paragraphs 1-37, alleged above, into this claim for relief.

62.     The Illinois Motor Vehicle Retail Installment Sales Act ("IMVRISA"), 815 ILCS 375/1 *et seq*., governs the installment sale of vehicles in Illinois.

63.     Plaintiff purchased a motor vehicle as that term is defined by the IMVRISA, 815 ILCS 375/2.1, pursuant to a retail installment transaction, 815 ILCS 375/2.4, the terms of which were reflected in a RIC. 815 ILCS 375/2.5.

64.     Finance charges under the IMVRISA, are defined to include charges such as the GAP ADDENDUM. *See*, 815 ILCS 375/2.9.

65.     The IMVRISA requires proper disclosures of the finance charge assessed under the contract. 815 ILCS 375/5.

66.     815 ILCS 375/5 provides: "A retail installment contract which complies with the federal Truth in Lending Act, amendments thereto, and any regulations issued or which may be issued thereunder, shall be deemed to be in compliance with the provisions of this Section." But as alleged in the First Claim for Relief, the RIC signed by Plaintiff

and assigned to Santander did not comply with the Truth in Lending Act. Plaintiff

incorporates paragraphs 39-60 for the purposes of showing non-compliance with the

TILA.

67.     815 ILCS 375/24 provides:

> (b)     No person who violates this Act, except as a result of an accident or bona fide error of computation, may recover any unpaid finance charge, delinquency or collection charge, or refinance charge in connection with the related retail installment contract.

68.     Defendant Santander must disgorge all finance charges collected from

Plaintiff and the class members pursuant to 815 ILCS 375/24.

## CLASS ACTION ALLEGATIONS

69.     This case is brought on behalf of a class of similarly situated consumers,

defined as follows:

> All consumers who, in the State of Illinois and in connection with the purchase of a vehicle pursuant to a RIC, signed a "Gap ADDENDUM" reflecting an APR in excess of the "Program Limit" printed on the GAP ADDENDUM. The class period is 1-year before the filing of this action for the TILA claim, and 5 years before the filing of this action for the claims under the IMVRISA.

70.     Excluded from the Class are Defendant, its legal representatives, assigns,

and successors, and any entity in which Defendant has a controlling interest. Further

excluded are Plaintiff's attorney(s). Also excluded is the judge assigned to this case, as

well as the staff of the judge and the judge's immediate family.

71.     Defendant's September 2014 consumer bond offering alone was backed

by loans made in connection with more than 84,000 vehicles.

72.     In 2011, 34.9% of all automobile purchases involving a Retail Installment

Contract included the purchase of GAP protection.

73.     Upon information and belief, the "Maximum APR" for the "GAP Program" at issue is not determined on an applicant-specific basis, and a form Addendum for the purchase of GAP protection reflecting a Maximum APR was used in most or all of the automobile purchases, on credit, that include the purchase of such GAP protection.

74.     Therefore, upon information and belief, the members of the proposed class are so numerous that joinder of all members is impracticable.

75.     Plaintiff will fairly and adequately represent and protect the interests of the Classes' members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

76.     Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, or due to the faulty disclosures at issue might not be aware of such claims, and will therefore have no effective remedy.

77.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

(a)     Is GAP Protection a worthless and deceptive product primarily used to pad loan transactions and improperly increase the amount financed with what is really profit?

(b)     Should a "GAP Charge" paid pursuant to a GAP Addendum executed in connection with a RIC reflecting an APRs in excess of the Addendum's specified Maximum APR be included in the calculation of the "amount financed" under TILA?

78.     Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

79.     The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class as a result of the faulty disclosures alleged herein. Plaintiff and the other members of the Class have all suffered harm and damages because of Defendant's conduct.

WHEREFORE, Plaintiff JOYCE PETTYE, on behalf of herself and the Class, prays for the following relief against Defendant, SANTANDER CONSUMER USA, INC.:

(A)     An order certifying this case as a class action on behalf of the Class as defined above, appointing Joyce Pettye as class representative, and appointing her counsel as class counsel;

(B)     Actual damages pursuant to 15 U.S.C. § 1640(a)(1) in an amount to be determined at trial;

(C)     Statutory damages pursuant to 15 U.S.C. § 1640(a)(2);

(D)     Attorney fees and costs pursuant to 15 U.S.C. § 1640(a)(3)

(E)     Disgorgement of all finance charges collected pursuant to 815 ILCS 375/24; and

(F)     Any other relief the Court deems just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,
Joyce Pettye, Plaintiff

By:
/s/ Christopher V. Langone
*One of Her Attorneys*

Christopher V. Langone, Esq.
Langone Law Firm
916 W. Dakin, #119
Chicago, IL 60613
(607) 592-2661
langonelaw@gmail.com

James P. Batson, Esq.
Law Office of James P. Batson
180 North Jefferson Street, #1010
Chicago, IL 60661
(914) 523-2278
jamespbatsonlegal@gmail.com

# EXHIBIT A

**FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 2000.00 |
|---|---|---|---|---|
| 27.06 % | $ 14247.00 | $ 19537.88 | $ 33784.88 | $ 35784.88 |

| Your payment schedule will be: | | |
|---|---|---|
| Number of Payments | Amount of Payments | When Payments Are Due |
| 72 | $ 585.00 | monthly beginning 04/19/2015 |
| N/A | $ N/A | N/A |

**Security:** You are giving a security interest in the goods being purchased and in any monies received in the possession of the Assignee or made part thereof.

**Late Charge:** If any payment is ten (10) days late, you will be charged 5% of the installment, that installment in excess of $200.00, or $ $10.00 of the installment up to $200.00 per fees.

**Prepayment:** You have the right to prepay the unpaid balance in full or in part at anytime without penalty.
See your contract terms below and on the reverse side for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties and prior information about security interests.

Other Charges / Amts Paid

To DOC FEE $ 166.75
To N/A $ N/A
To N/A $ N/A

Buyer(s) BOYCE PETTUS 3911 W KEELER AVE CHICAGO IL 60626

Buyer(s) N/A

Seller A PIEDMONTE SUZUKI 945 EAST NORTH AVE NORTH AURORA 60504

Itemization of Amount Financed

| Cash Price | $ 14000.00 |
| Down Payment | $ 2000.00 |
| Trade-in | N/A |
| Net Trade-in | N/A |
| Total Down Payment | $ 2000.00 |
| Amount Paid to Your Account | $ 11000.00 |

WE MAY BE RETAINING A PORTION OF THIS AMOUNT

| Insurance | N/A |
| Service Contract | $ 835.00 |
| Official Fees | $ 1449.37 |
| Optional GAP Fee | $ 25.00 |
| Amount $ | $ 2537.88 |

USED  2012 FORD  FOCUS  4DR  BLACK

**Buyer Promises to pay to the order of Seller the above amount.**

ILLINOIS MOTOR VEHICLE

**Credit Insurance** is not required by Seller nor is it a factor in approval of the extension of credit. No credit insurance is to be provided unless the Buyer signs the appropriate authorization below. Group Credit Insurance is available for the term of the credit upon acceptance by insurer at the following costs.

Credit Life Insurance $ _____

Ех A

RETAIL INSTALLMENT CONTRACT

A:2

**GAP ADDENDUM**

Contract # 359952

The **Addendum** is between the **Customer/Borrower** (You or Your) and the **Dealer/Creditor** (We, Us, or Our) or if the **Financing Contract** is assigned with the assignee.

| Customer/Borrower | Address | | |
|---|---|---|---|
| JOYCE PETTYE | 1311 N KEELER AVE | | |
| City | State | Zip | Customer Phone # |
| CHICAGO | IL | 60651 | (773)773-7777 |

| Dealer/Creditor | Dealer / Account # | Financial Institution / Lender | | |
|---|---|---|---|---|
| AL PIEMONTE SUZUKI | | SANTANDER CONSUMER USA | | |
| Address | | Address | | |
| 401 EAST NORTH AVE | | PO BOX 961288 | | |
| City | State | Zip | City | State | Zip |
| NORTHLAKE | IL | 60164 | FT WORTH | TX | 76161 |

| Year | Make | Model | | Charge for Addendum | APR % | Term of Addendum |
|---|---|---|---|---|---|---|
| 2012 | FORD | FOCUS | | 895.00 | 27.06 | 72 |
| VIN | | | | Amount Financed | Financing Contract Inception Date | |
| 1FAHP3K21CL436623 | ___ New  XX Used | MSRP / NADA 13000.00 | 13537.80 | | 03/05/2015 | |

**PROGRAM LIMITS**

| Maximum AFVR: 150% MSRP/NADA | Maximum Term: 84 Months | Maximum Limit of Coverage: $50,000 | Maximum APR: 24.0% | Maximum Amount Financed Limit: $100,000 | Finance Instrument Loan X Installment Sales Contract |
|---|---|---|---|---|---|

This **Addendum** amends the **Financing Contract**. In the event of a **Constructive Total Loss** of the **Collateral**, we hereby agree to waive our rights against you for the amount due under a **Qualifying Loss**. You will remain responsible for any past due amounts, payment extensions, or any items listed in EXCLUSIONS. This **Addendum** will follow the **Financing Contract** with no subrogation rights against the **Customer/Borrower**, if the **Financing Contract** is sold or assigned by us.

Although not required to do so, you elect to purchase this **Addendum** for an additional charge which is shown above. You may as an alternative to purchasing this **Addendum**, be able to purchase a similar product from a company of your choice. **This GAP Program is not insurance, does not take the place of insurance on the Collateral** and does not afford collision, comprehensive, or any other form of automobile insurance coverage. You are responsible for all communications with your Primary Carrier including notice and claims. If you purchase this **Addendum** from us, you understand that we may retain all or a portion of the charge paid by you.

ENROLLMENT IS AVAILABLE ONLY AT THE TIME THE **FINANCING CONTRACT** IS ORIGINALLY EXECUTED. BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS **ADDENDUM** IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT THE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THE **COLLATERAL**.

The coverage under this **Addendum** may decrease over the term of your **Financing Contract**. You should carefully read the front and back of this **Addendum** for additional information on conditions, limitations and exclusions that could prevent you from receiving the amount due under a **Qualifying Loss** attributed to a **Constructive Total Loss**.

**YOUR RIGHT TO CANCEL:** You have the unconditional right to cancel this optional **Addendum** for a refund/credit of the unearned portion of the charge for this **Addendum** at any time. If you cancel within 30 days of the **Addendum** purchase, you will receive a full refund/credit of the **Addendum** cost, provided no loss has occurred. After 30 days, you will receive a refund/credit of the **Addendum** cost calculated by the Pro Rata refund method, or by the refund method as may be required by state or federal law, less a $50.00 cancellation fee, where such cancellation fee is permitted by law. To cancel this **Addendum** and request a refund/credit, you must contact the **Dealer/Creditor**, in writing, at the address shown above. If the refund/credit is not received within 60 days of notice of cancellation, contact the Administrator shown below.

This **Addendum** has no coverage to any **Collateral** where: a) the amount financed is greater than the Maximum Amount Financed Limit; and/or b) the **Financing Contract** exceeds the Maximum Term stated above.

By your signature below, you acknowledge you have read and understand this **Addendum** and its CONDITIONS and no other verbal representations have been made to you that differ from these written provisions and that this **Addendum** is not an insurance policy or part of an insurance policy. You authorize release of financing contract or any other information required for processing this addendum or processing of a loss.

| _Joyce Pettye_ | 03/05/2015 | _signature_ | 03/05/2015 |
|---|---|---|---|
| Customer/Borrower Signature | Date | Dealer/Creditor Signature | Date |
| N/A | N/A | Agent | |
| Co-Customer/Borrower Signature | Date | Title | |

A **Qualifying Loss** must be reported to the Administrator within 180 days from the **Settlement Date**. No amount will be waived for any **Qualifying Loss** reported after 180 days. In the event there is no **Primary Insurance**, the **Customer/Borrower** has 180 days from the **Date of Loss** to report a **Qualifying Loss**. A **Qualifying Loss** will cause this **Addendum** to terminate and be fully earned and not subject to any cancellation refund.

**QUALIFYING LOSS PROCEDURES:** In the event of a **Constructive Total Loss**, you must notify and provide the following to the Administrator. Please submit: 1) a copy of the **Financing Contract** and a copy of this signed **Addendum**, 2) a copy of the **Financing Contract** history and pay-off as of the **Date of Loss**, 3) a legible copy of the police report, which must include confirmation of the **Collateral** shown on this **Addendum**. If a police report is not available, and the cause of loss to **Collateral** was NOT due to theft or fire, a signed and notarized brief description of the loss (including confirmation of the **Collateral**) will be acceptable, 4) a copy of the settlement check, **Collateral** valuation report and total loss breakdown, and Declarations Page issued by the **Primary Carrier**, (provided **Primary Carrier** coverage is in effect on the **Date of Loss**), 5) a copy of the Bill of Sale (aka Buyer's Order, Purchase Agreement, etc.) as well as the manufacturer's invoice or window sticker (if the vehicle was purchased new). If the vehicle was purchased used, a copy of the bookout sheet, 6) verification of any other refundable amounts, 7) any additional or reasonable documentation requested by the Administrator. The Administrator will not be able to obtain this information for you.

REPORT A QUALIFYING LOSS TO OUR ADMINISTRATOR:
PARTNERS ALLIANCE CORPORATION – PO BOX 1630 POWAY CA 92074 – 800 970 3302
Qualifying Loss Documentation Fax Number: 858-513-9224

*Exh B*

**CONDITIONS**

| 1FAHP3K21CL436623 | | XX Used | 13000.00 | 13537.80 | 03/05/2015 |

### PROGRAM LIMITS

| Maximum AFVR: 150% MSRP/NADA | Maximum Term: 84 Months | Maximum Limit of Coverage: $50,000 | Maximum APR: 24.0% | Maximum Amount Financed Limit: $100,000 | Finance Instrument Loan XX Installment Sales Contract |
|---|---|---|---|---|---|

This Addendum amends the **Financing Contract**. In the event of a **Constructive Total Loss** of the **Collateral**, we hereby agree to waive our rights against you for the amount due under a **Qualifying Loss**. You will remain responsible for any past due amounts, payment extensions, or any items listed in EXCLUSIONS. This **Addendum** will follow the **Financing Contract** with no subrogation rights against the **Customer/Borrower**, if the **Financing Contract** is sold or assigned by us.

Although not required to do so, you elect to purchase this **Addendum** for an additional charge which is shown above. You may as an alternative to purchasing this **Addendum**, be able to purchase a similar product from a company of your choice. **This GAP Program is not insurance, does not take the place of insurance on the Collateral and** does not afford collision, comprehensive, or any other form of automobile insurance coverage. You are responsible for all communications with your Primary Carrier including notice and claims. If you purchase this **Addendum** from us, you understand that we may retain all or a portion of the charge paid by you.

ENROLLMENT IS AVAILABLE ONLY AT THE TIME THE **FINANCING CONTRACT** IS ORIGINALLY EXECUTED. BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS **ADDENDUM** IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT THE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THE COLLATERAL.

The coverage under this **Addendum** may decrease over the term of your **Financing Contract**. You should carefully read the front and back of this **Addendum** for additional information on conditions, limitations and exclusions that could prevent you from receiving the amount due under a **Qualifying Loss** attributed to a **Constructive Total Loss**.

**YOUR RIGHT TO CANCEL:** You have the unconditional right to cancel this optional **Addendum** for a refund/credit of the unearned portion of the charge for this **Addendum** at any time. If you cancel within 30 days of the **Addendum** purchase, you will receive a full refund/credit of the **Addendum** cost, provided no loss has occurred. After 30 days, you will receive a refund/credit of the **Addendum** cost calculated by the Pro Rata refund method, or by the refund method as may be required by state or federal law, less a $50.00 cancellation fee, where such cancellation fee is permitted by law. To cancel this **Addendum** and request a refund/credit, you must contact the **Dealer/Creditor**, in writing, at the address shown above. If the refund/credit is not received within 60 days of notice of cancellation, contact the Administrator shown below.

This **Addendum** has no coverage to any **Collateral** where: a) the amount financed is greater than the Maximum Amount Financed Limit; and/or b) the **Financing Contract** term exceeds the Maximum Term stated above.

By your signature below, you acknowledge you have read and understand this **Addendum** and its CONDITIONS and no other verbal representations have been made to you that differ from these written provisions and that this Addendum is not an insurance policy or part of an insurance policy. You authorize release of financing contract or any other information required for processing this addendum or processing of a loss.

| _Joyce Pettus_ | 03/05/2015 | _Agent_ | 03/05/2015 |
|---|---|---|---|
| Customer/Borrower Signature | Date | Dealer/Creditor Signature | Date |
| N/A | N/A | | |
| Co-Customer/Borrower Signature | Date | Title | |

A **Qualifying Loss** must be reported to the Administrator within 180 days from the **Settlement Date**. No amount will be waived for any Qualifying Loss reported after 180 days. In the event there is no **Primary Insurance**, the Customer/Borrower has 180 days from the **Date of Loss** to report a **Qualifying Loss**. A Qualifying Loss will cause this **Addendum** to terminate and be fully earned and not subject to any cancellation refund.

**QUALIFYING LOSS PROCEDURES:** In the event of a **Constructive Total Loss**, you must notify and provide the following to the Administrator. Please submit: 1) a copy of the **Financing Contract** and a copy of this signed **Addendum**, 2) a copy of the **Financing Contract** history and pay-off as of the **Date of Loss**, 3) a legible copy of the police report, which must include confirmation of the **Collateral** shown on this **Addendum**. If a police report is not available, and the cause of loss to **Collateral** was NOT due to theft or fire, a signed and notarized brief description of the loss (including confirmation of the **Collateral**) will be acceptable, 4) a copy of the settlement check, **Collateral** valuation report and total loss breakdown, and Declarations Page issued by the **Primary Carrier**, (provided **Primary Carrier** coverage is in effect on the **Date of Loss**), 5) a copy of the Bill of Sale (aka Buyer's Order, Purchase Agreement, etc.) as well as the manufacturer's invoice or window sticker (if the vehicle was purchased new). If the vehicle was purchased used, a copy of the bookout sheet, 6) verification of any other refundable amounts, 7) any additional or reasonable documentation requested by the Administrator. The Administrator will not be able to obtain this information for you.

REPORT A QUALIFYING LOSS TO OUR ADMINISTRATOR:
PARTNERS ALLIANCE CORPORATION – PO BOX 1630 POWAY CA 92074 – 800 970 3302
Qualifying Loss Documentation Fax Number: 858-513-9224

### CONDITIONS

1. Concealment, Misrepresentation and fraud: This Addendum may not cover a qualifying loss if you, the Customer/Borrower intentionally conceal or misrepresent any material fact relating to this Addendum.
2. You are responsible for making at least the minimum payment under the terms of the **Financing Contract** for each payment due scheduled after the **Date of Loss** until the request for a **Qualifying Loss** has been processed.
3. Should you not have collectible automobile physical damage insurance on the **Date of Loss**, it is your responsibility to advise the Administrator within 180 days from the **Date of Loss** and have the **Collateral** available for inspection by the Administrator (inspection will be paid by the Administrator). The Administrator will calculate the **Actual Cash Value** of the **Collateral** immediately prior to the loss.
4. This coverage applies only to a **Qualifying Loss** sustained while the **Collateral** is within the United States of America (USA), its territories or possessions, Canada, or being transported between any parts thereof.
5. This **Addendum** will provide coverage to the **Collateral** where the Amount Financed to Value Ratio (AFVR) exceeds the Maximum AFVR stated above however, the **Addendum** will not cover the amount exceeding the Maximum AFVR.

**B.2**

DIF-GEN            LZX 54834           06/10

# EXHIBIT B

**MITIGATION OF LOSS**
You should do all things reasonable and practical to avoid any loss covered under this **Addendum** and to protect the **Collateral** from any further loss. You should also take reasonable measures to ensure that the maximum amount of **Actual Cash Value** of the **Collateral** is paid by your **Primary Carrier**.

**TERMINATION OF ADDENDUM**
This **Addendum** will terminate on the earlier date that one of the following events occurs: 1. the date your **Financing Contract** is scheduled to terminate; 2. upon payment in full of the **Financing Contract**; 3. expiration of any redemption period following the repossession or surrender of the **Collateral**; 4. in the event of a **Constructive Total Loss** or theft of the **Collateral**; or 5. the date the **Financing Contract** is prepaid or the **Financing Contract** if refinanced.

**DEFINITIONS**
**Actual Cash Value (ACV)** means the retail value of the **Collateral** on the **Date of Loss**, as listed in a national or regional guide, such as National Automobile Dealers Association (NADA) or an equivalent national or regional guide for the territory in which the **Collateral** is principally garaged.
**Collateral** is the vehicle described in the schedule of this **Addendum** and described in the **Financing Contract**.
**Commercial Purposes** means the use of the **Collateral** as a taxicab, public omnibus, jitney or sightseeing conveyance, or for carrying goods or passengers for compensation or hire or the **Collateral** exceeds 12,500 lbs (GVW).
**Constructive Total Loss** means a direct and accidental loss of or damage to the **Collateral**, which meets one of these criteria: 1.) the total cost to repair the **Collateral** is greater than or equal to the **Actual Cash Value** of the **Collateral** immediately prior to the loss; or 2.) the **Customer/Borrower's Primary Carrier** declares the **Collateral** a total loss. In the case there is no primary insurance coverage, the **Collateral** must be available for the Administrator's inspection (inspection will be paid by the Administrator) to determine if the **Collateral** is a total loss, except in the case of unrecovered theft.
**Customer/Borrower** - The natural person(s) or business named in the **Financing Contract** purchasing this **Addendum** from the **Dealer/Creditor**.
**Date of Loss** means the date on which the **Collateral** is reported stolen or incurs physical damage that is severe enough to constitute a **Constructive Total Loss**.
**Financing Contract** means the contract which represents the financing instrument for the purchase of the **Collateral**, which sets forth the terms, conditions, inception date, and expiration date of the financing instrument.
**Financial Institution/Lender** means the entity to which your **Financing Contract** is sold, assigned or transferred.
**Loan** means **Financing Contract**.
**Net Payoff** means the amount, as of the **Date of Loss**, represented by the portion of your unpaid balance according to the original payment schedule of the **Financing Contract** that is secured by the **Collateral**, subject to the following limitations: the amount does not include any unearned finance charges or loan/financing charges; past due payments/skipped payments as described in the **Financing Contract**; late charges; uncollected service finance charges; refundable prepaid taxes and fees; disposition fees; termination fees; penalty fees; the recoverable portion of finance service charges or the recoverable portion of financed amounts for unearned insurance premiums or refundable charges (including, but not limited to credit life, vehicle service coverages/warranties and guaranteed automobile protection charges) that are owed by you on the **Date of Loss**; and amounts that are added to the financing instrument balance after the inception date of the **Financing Contract**.
**Qualifying Loss** means the difference between the **Net Payoff** and the **Primary Carrier** settlement or in the event of no **Primary Carrier**, the **Net Payoff** and the **Actual Cash Value**. The **Qualifying Loss** will not exceed the Maximum Limit of Coverage as shown in the **Addendum** schedule. If settlement by the **Primary Carrier** or the **Actual Cash Value** is greater than or equal to the outstanding balance, no **Qualifying Loss** will be afforded under this **Addendum**. **Qualifying Loss** includes the amount of the physical damage deductible on the **Primary Carrier** policy up to $1,000. In the event that there is no **Primary Carrier** coverage in effect on the **Date of Loss**, or if the **Primary Carrier** is declared insolvent, or if no proceeds are received from the **Primary Carrier** policy, the **Addendum** will only cover the difference between the **Net Payoff** and the **Actual Cash Value** of the **Collateral** on the **Date of Loss**. If there is no **Primary Carrier**, the **Collateral** must be available for inspection by the Administrator (inspection will be paid by the Administrator) to determine if the **Collateral** is a **Constructive Total Loss**, except in the event of an unrecovered theft.
**Primary Carrier** means the insurance company selected by you prior to the **Date of Loss** that underwrites a policy of insurance providing physical damage coverage on the **Collateral** or the insurance company that provides liability coverage to any person who has caused the **Collateral** to incur a **Constructive Total Loss**.
**Settlement Date** - the date on which the **Primary Carrier** issues the settlement check for the **Collateral**.
**Installment Sales Contract** means **Financing Contract**.

**EXCLUSIONS**
In addition to other provisions herein, this **Addendum** does not provide coverage for loss:
A.  occurring prior to the effective date of this **Addendum**.
B.  occurring prior to the **Financing Contract** inception date shown in the schedule.
C.  due to confiscation of the **Collateral** by a government body or public official.
D.  caused by theft, unless a police report is filed.
E.  resulting from the **Collateral** being operated, used, or maintained in any race, speed contest, or other contest.
F.  to the **Collateral** held as security under any wholesale, floor plan, field warehouse, or any type of financing made to a dealership or its employees.
G.  to the **Collateral**, while used for **Commercial Purposes**.
H.  occurring after the **Collateral** has been repossessed by the **Financial Institution/Lender** or placed in their possession or in the possession of their employees or agents.
I.  to **Collateral** with a **Financing Contract** in which the Amount Financed for **Collateral** exceeds the Maximum Amount Financed Limit shown on the front of this **Addendum** at the inception date of the **Financing Contract**.
J.  to **Collateral** with a **Financing Contract** where the contract term exceeds the Maximum Term as shown on the front of this **Addendum**.
K.  where the **Financing Contract** has an annual percentage rate (A.P.R.) in excess of the Maximum APR Limit shown on the front page of this **Addendum**.
L.  for any amounts deducted from the **Primary Carrier** settlement due to wear and tear, prior damage, unpaid insurance premiums, and towing and storage.
M.  to the following vehicles which are excluded from coverage: Aston Martin, Bentley, Daewoo, Ferrari, Lamborghini, Lotus, Maserrati, Rolls Royce, Saab, Saturn and Yugo.
N.  attributable to other than the standard or optional equipment available from the manufacturer of the **Collateral**, including but not limited to: special carpeting, furniture, bars, audio, video, or data equipment, cooking and sleeping facilities, customized paint, or any equipment installed to overcome a physical handicap. Factory approved conversion packages and dealer installed options usually included in used car value guidebooks are not excluded.
O.  to the **Collateral** with a salvage or rebuilt title at the time of sale or for which title has been changed or re-issued as salvage or rebuilt prior to the **Date of Loss**.
P.  resulting directly or indirectly from any dishonest, fraudulent, criminal, or illegal act or arising from an intentional act committed by you.
Q.  from a **Financing Contract** that does not have uniform scheduled payments after the first payment is made and/or a **Financing Contract or Loan** that is self-financed. The first payment must be made within 45 days of the Financing Contract inception date.
R.  to any **Collateral** financed under a lease agreement/contract.
S.  due to war, whether or not declared, invasion, insurrection, rebellion, or revolution.

**STATE PROVISIONS**
**Colorado, Kansas, Indiana, Louisiana, Missouri, New Mexico, Vermont and Wisconsin:** The cancellation fee is not applicable.
**Georgia:** The effective date of any cancellation may be no earlier than ninety (90) days prior to the date such written notice is received by the Dealer/Creditor.
**Indiana:** Financing Contracts where the amount financed is less than 80% of MSRP are not eligible for participation in this GAP program. You may be able to obtain GAP coverage from your primary insurance carrier. For Questions or Complaints, you may contact the Indiana Department of Financial