# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOYCE PETTYE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 15 C 7669 |
| v. | ) |
| | ) |
| SANTANDER CONSUMER, USA, INC., | ) |
| an Illinois Corporation, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On November 24, 2015, Plaintiff Joyce Pettye, individually and on behalf of a class, filed a three-count First Amended Complaint against Defendant Santander Consumer, USA, Inc. ("Santander") alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*. (Count I), the Illinois Motor Vehicle Retail Installment Sales Act ("IMVRISA"), 815 ILCS 375/1, *et seq*. (Count II), and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq*. (Count III). Before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part Defendant Santander's motion.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule

8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining the sufficiently of a complaint under the plausibility standard, courts "accept the complaint's well-pleaded facts as true and construe the allegations in the light most favorable to the plaintiff." *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014). When ruling on motions to dismiss, federal courts may consider documents attached to the pleadings without converting the motion to dismiss into a motion summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); Fed.R.Civ.P. 10(c).

## BACKGROUND

In her First Amended Complaint, Plaintiff, an African-American woman, alleges that Defendant Santander engages in the business of financing sub-prime automobile installment contracts in a discriminatory manner. (R. 20, First Am. Compl. ¶¶ 1, 6, 111.) Plaintiff further alleges that on March 5, 2015, she went to Al Piemonte Super Car Outlet, a car dealership located in Northlake, Illinois, to purchase a car for her personal use. (*Id.* ¶ 69.) After conferring

2

with members of the dealership's sales staff, Plaintiff decided to purchase a used 2012 Ford Focus for $13,000.00. (*Id.* ¶ 70.) In conjunction with this purchase, Plaintiff executed a Retail Installment Contract ("RIC"). (*Id.* ¶ 71.) Plaintiff maintains that Santander is the holder of the RIC and that she has made payments toward the vehicle that is subject of the RIC, and that Santander has collected finance charges pursuant to the RIC. (*Id.* ¶¶ 72-74.) In addition, Plaintiff alleges that under the terms of the RIC, she is required to make 72 monthly payments of $385.90 at an annual percentage rate of 27.06%. (*Id.* ¶ 75.) She also alleges that the "amount financed" disclosed in the RIC is $13,537.00, which includes the cash purchase price of the vehicle and other charges. (*Id.* ¶¶ 76, 77.) The "finance charge" disclosed on the RIC is $14,247.00, therefore, the total sale price listed on the RIC is $29,784.80. (*Id.* ¶¶ 78, 79.)

Plaintiff further alleges that before signing the RIC, the dealership did not give her any information regarding the "GAP" debt-cancellation addendum, including the amount charged.[1] (*Id.* ¶¶ 81, 104.) She also maintains that the dealership's sales staff provided very little information about the indirect financing arrangement involving Defendant Santander. (*Id.* ¶ 82.) She states that after soliciting her credit application, the dealership's sales agents represented that they would attempt to obtain financing for her that she would be unable to obtain without their assistance. (*Id.* ¶ 83.) Plaintiff alleges that after the dealership's representative found out that she was going to put cash down on the vehicle, he stated that "we are going to try to get you

---

[1] Guaranteed Auto Protection Insurance ("GAP") is a form of debt cancellation coverage. *See Rivera v. Grossinger Autoplex, Inc.,* 274 F.3d 1118, 1120 (7th Cir. 2001); *Rodriguez v. Lynch Ford, Inc.,* No. 03 C 7727, 2004 WL 2958772, at *9 (N.D. Ill. Nov. 18, 2004). "It acts to cancel any outstanding loan deficiency if a consumer's property insurance is insufficient to pay off the loan on an automobile that is stolen or destroyed." *Rodriguez,* 2004 WL 2958772, at *9.

approved – we can do that." (*Id*. ¶ 84.) According to Plaintiff, at one point the dealership's representative told her that she had been turned down for financing, but that the dealership would obtain the necessary financing for her. (*Id*. ¶ 85.) Plaintiff alleges that she was at the dealership for approximately three hours, and that, eventually, the dealership's sales staff told her that they had obtained financing for her and then presented her with the RIC. (*Id*. ¶¶ 86, 87.) Plaintiff contends that this occurred only after she advised the dealership's representative that she was tired and would leave taking her cash down payment with her. (*Id*. ¶ 88.)

Furthermore, Plaintiff alleges that before dealership staff asked her to sign the RIC, they did not advise her of the required TILA disclosures, orally or in writing, other than being told the amount of the monthly payments she would be obligated to make under the RIC, and the total number of such payments. (*Id*. ¶ 89.) Instead, when Plaintiff decided to purchase the vehicle, the dealership representatives presented her with a stack of documents containing signature lines marked by the letter X. (*Id*. ¶ 90.) When they provided Plaintiff with these documents, the dealership's sales staff informed her that they were "her contract," and that she should "sign every signature line marked with an 'X.'" (*Id*. ¶ 91.) The stack of papers contained not only Plaintiff's RIC, but also a document entitled "GAP ADDENDUM," that purported to sell Plaintiff a debt-cancellation agreement to absolve her of liability for the unpaid balance of the RIC in the event of a total loss of the collateral under certain circumstances. (*Id*. ¶¶ 92, 93.) The "GAP ADDENDUM" cost Plaintiff an additional charge of $895.00. (*Id*. ¶ 94.) Plaintiff alleges that the dealership's sales staff did not provide her with a disclosure of the GAP charge and that it was included in the "amount financed," instead of under "finance charges" on her RIC. (*Id*. ¶¶ 95, 96.) Moreover, Plaintiff contends that the "GAP ADDENDUM" imposed "Program Limits,"

4

including a "Maximum APR" of 24.00% and that the APR on the RIC exceeded the Program Limit, thus rendering the GAP ADDENDUM void and worthless. (*Id*. ¶¶ 97, 98.) Additionally, Plaintiff alleges that the dealership's sales staff did not inform her before she signed the RIC that she would be presented the opportunity to purchase a GAP ADDENDUM or that any such purchase was not required and would not be a factor in the decision to extend credit. (*Id*. ¶ 103.) As such, Plaintiff maintains that had she known the GAP ADDENDUM was voluntary, she would not have purchased this coverage. (*Id*. ¶ 106.) Plaintiff further asserts that the dealership staff imposed the worthless GAP ADDENDUM on her as a result of Santander's discriminatory practice of encouraging dealers to aggressively market such add-ons and interest rate markups after approving the deal at the buy rate when selling vehicles to African-American women. (*Id.* ¶¶ 108, 111.)[2]

## ANALYSIS

**I.     TILA Claim – Count I**

In Count I of the First Amended Complaint, Plaintiff alleges that Defendant Santander failed to make the required TILA disclosures by including the GAP insurance fee of $895 as a "finance charge." TILA and its implementing Regulation Z "ensure that consumers are given 'meaningful disclosure of credit terms' and to protect consumers from unfair credit practices." *Marr v. Bank of Am., N.A.,* 662 F.3d 963, 966 (7th Cir. 2011) (quoting 15 U.S.C. § 1601(a)). Relevant to Plaintiff's claims, "TILA requires creditors to disclose any finance charges that a consumer will pay under a given credit transaction." *Rivera v. Grossinger Autoplex, Inc.,* 274

---

[2] Defendant Santander states that it has tendered this matter to the dealership pursuant to certain contractual obligations and that once the tender is complete, the dealership will be a required party to this litigation under Federal Rule of Civil Procedure 19(a)(1).

F.3d 1118, 1121 (7th Cir. 2001) (citing 15 U.S.C. § 1638(a)(3)); *see also Walker v. Wallace Auto Sales, Inc.,* 155 F.3d 927, 930 (7th Cir. 1998) ("TILA requires creditors to disclose clearly and accurately to consumers any finance charge that the consumer will bear under the credit transaction."). Moreover, "disclosures made in compliance with these requirements must be clear and conspicuous as well as in writing." *Rivera,* 274 F.3d at 1121 (citing 12 C.F.R. § 226.17(a)(1)). "Conspicuousness is a question of law under TILA that, like clarity, is governed by an objective, reasonable person approach." *Id.* at 1122.

The parties agree that Defendant Santander was not the originator of the RIC, but is the assignee. An assignee is liable only where the TILA violation appears on the face of the disclosure statement. *See* 15 U.S.C. § 1641(a) (assignees of original lender are liable "if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement"). A violation is "apparent" under § 1641(a) if it is "(1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." 15 U.S.C. § 1641(a); *see also Iroanyah v. Bank of Am., N.A.,* 851 F. Supp. 2d 1115, 1130 (N.D. Ill. 2012). "Only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA," because § 1641(a) "does not impose a duty of additional inquiry on assignees." *Taylor v. Quality Hyundai, Inc.,* 150 F.3d 689, 694 (7th Cir. 1998). "This limitation of assignee liability is 'sensible, as a duty to inquire beyond the assigned documents would impede commerce, which depends upon the established practice of assigning commercial paper at a discount to financial institutions.'" *Means v. Ameriquest Mortg. Co.,* No. 2:06-CV-409-TLS, 2012 WL 4831657, at

6

*17 (N.D. Ind. Oct. 9, 2012) (citation omitted).

As discussed, "TILA requires creditors to disclose clearly and accurately to consumers any finance charge that the consumer will bear under the credit transaction," in order "to prevent creditors from circumventing TILA's objectives by burying the cost of credit in the price of the goods sold." *Walker*, 155 F.3d at 930. Here, Defendant Santander argues that debt cancellation fees, like the GAP fee at issue in this lawsuit, "may be excluded from finance charges if the following requirements are met: (A) The debt cancellation agreement or coverage is not required by the creditor, and this fact is disclosed in writing; (B) The fee or premium for the initial term of coverage is disclosed...; and (C) The consumer signs or initials an affirmative written request for coverage after receiving the disclosures specified in this paragraph." *Rivera*, 274 F.3d at 1121 (quoting 12 C.F.R. § 226.4(d)(3)(i)); *see also Rodriguez v. Lynch Ford, Inc.,* No. 03 C 7727, 2004 WL 2958772, at *10 (N.D. Ill. Nov. 18, 2004) ("Under TILA, all disclosures made under these requirements must also be clear and conspicuous.").

Before analyzing the *Rivera* factors, the Court turns to Plaintiff's threshold argument that because her GAP coverage is worthless and illusory – based on her argument that the annual percentage rate of the loan that she negotiated with the dealership exceeds the GAP Program Limit – the GAP charge at issue cannot meet the definition of a "debt cancellation fee" in the first instance. In support of her theory, Plaintiff fails to cite legal authority, but instead argues that because her GAP insurance does not provide "coverage" it contradicts Regulation Z. Not only is Plaintiff's argument attenuated, but whether her GAP insurance was worthless or illusory is a question of contract law, not whether Defendant Santander violated TILA as an assignee. *See, e.g., Johnson v. Rohr-Ville Motors, Inc.,* 64 F. Supp. 2d 737, 738 (N.D. Ill. 1999).

7

The Court therefore looks to whether the disclosures on the assigned documents at issue meet the *Rivera* requirements and are clear and conspicuous, thus allowing for the GAP fee at issue to be excluded from the finance charge. *See Rivera,* 274 F.3d at 1122 ("Conspicuousness is a question of law under TILA that, like clarity, is governed by an objective, reasonable person approach."). First, on the face of GAP ADDENDUM, there is a stand alone paragraph above the signature line that states in all capital letters:

> ENROLLMENT IS AVAILABLE ONLY AT THE TIME THE FINANCING CONTRACT IS ORIGINALLY EXECUTED. BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT.

(R. 23-2, Ex. B, GAP ADDENDUM.) This written disclosure – that was above the signature line and in all capital letters – clearly and conspicuously states that the GAP coverage is voluntary and not required to obtain credit, thus fulfilling the first *Rivera* requirement. *See id.* at 1122 (addendum that "uses capitalization to draw the reader's attention to material portions of the agreement, namely those disclosing that GAP coverage is voluntary and not a prerequisite to the obtainment of credit" is clear and conspicuous). Therefore, unlike the situation in *Rodriguez* – where the district court concluded that the required disclosures were not conspicuous because they were printed at the bottom of the page with the smallest type on the page – a reasonable person would conclude that the disclosure at issue here is clear and conspicuous under *Rivera's* teachings. Next, the $895 fee for the GAP coverage is disclosed in writing on the face of the GAP ADDENDUM under the "charge for the addendum," and is listed on the RIC as "PARTNERS GAP." (Exs. A, B.) Last, Plaintiff signed (executed) the GAP ADDENDUM with these disclosures, as well as the RIC, which listed the cost of the GAP coverage. (*Id.*) Because

8

there are no TILA violations apparent on the face of the assigned documents and the disclosures comply with the *Rivera* exception based on 12 C.F.R. § 226.4(d)(3), Defendant Santander – as an assignee – cannot be held liable for the inclusion of the $895 GAP fee in the "amount financed" section of the RIC. *See Taylor,* 150 F.3d at 694 ("Only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA."). The Court therefore grants Defendant Santander's motion to dismiss Count I of the First Amended Complaint.

Because both Plaintiff and Defendant Santander agree that Plaintiff's state law IMVRISA claim depends on her TILA claim, the Court grants Defendant's motion to dismiss Count II of the First Amended Complaint, as well.

## II. ECOA Claim – Count III

In Count III of her First Amended Complaint, Plaintiff alleges a disparate impact claim under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.*, based on her race and gender. *See A.B. & S. Auto Serv., Inc. v. S. Shore Bank of Chicago,* 962 F.Supp. 1056, 1060 (N.D. Ill. 1997) (Williams, J.) ("A credit applicant can prove discrimination under the ECOA by using any one of [the] different approaches used in the employment discrimination context," including the "disparate impact analysis"). The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). To state a disparate impact claim under the ECOA, a plaintiff must: (1) identify a specific, facially neutral policy or practice adopted by the defendant; (2) allege a disparate impact on a protected group; and (3) show a causal relationship between the challenged policy or

9

practice and the alleged disparate impact. *See Smith v. City of Jackson,* 544 U.S. 228, 241, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005); *Hoffman v. Option One Mortgage Corp.,* 589 F. Supp. 2d 1009, 1011 (N.D. Ill. 2008).

Defendant Santander first argues that Plaintiff has failed to allege a prima facie case of disparate impact discrimination under the ECOA. Under the federal pleading standards, however, a plaintiff need not plead a prima facie case because it is an evidentiary standard, not a pleading requirement. *See Swierkiewicz v. Sorema,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Luevano v. Wal–Mart Stores, Inc.,* 722 F.3d 1014, 1028 (7th Cir. 2013) ("Neither *Iqbal* nor *Twombly* overruled *Swierkiewicz*, and it is our duty to apply the Supreme Court's precedents unless and until the Supreme Court itself overrules them."); *see also Twombly*, 550 U.S. at 569 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

Turning to its other arguments, in its opening brief, Defendant generally contends that Plaintiff has failed to identify a specific policy or practice underlying her disparate impact claim. *See Smith,* 544 U.S. at 241; *Hoffman,* 589 F.Supp.2d at 1011. Plaintiff, on the other hand, maintains that she has alleged a specific, facially neutral practice, namely, that Defendant Santander's discretionary credit pricing policy and practice, although facially neutral, has a disproportionately negative effect on African-American women. (First Am. Compl. ¶ 158.) Plaintiff further alleges that the specific pricing and markup policies involve discretionary non-risk related charges or add-ons, such as the GAP Addendum, and that, as applied, the average add-ons imposed on African-American women were significantly greater than on white consumers. (*Id*. ¶¶ 28, 159.) In addition, Plaintiff alleges that "the disparities between the terms

of the credit transactions involving African-American women and the terms involving white consumers, and white men specifically, could not have occurred by chance and cannot be explained by factors unrelated to race and gender." (*Id.* ¶ 160; *see also* ¶¶ 29-31.) Plaintiff specifically alleges that she is challenging "Santander's practices of permitting dealer rate markups and paying dealers 'reserve' or 'participation' for negotiating such markups, and encouraging and incentivizing dealerships to impose rate markups and add-ons." (*Id.* ¶ 162(a); *see also* ¶¶ 29, 32.)

Based on these allegations, Plaintiff has sufficiently alleged – with the requisite specificity – two aspects of Defendant's credit pricing and mark-up policies that she is challenging, namely, the discretionary non-risk related charges or add-ons and the financial incentives for interest rate markups. Nevertheless, in its reply brief, Defendant argues that Plaintiff failed to allege that she was subjected to these specific policies and that these policies harmed her.[3] At this procedural posture, the Court accepts Plaintiff's allegations as true and construes them in the light most favorable to Plaintiff, not Defendant. *See Thulin,* 771 F.3d at 997. Under the circumstances, Plaintiff has provided a sufficient factual background showing that she was subject to these policies and injured as a result of them, including that she paid an inflated interest rate in financing her car and paid for a GAP insurance policy that she alleges is worthless. (*Id.* ¶¶ 83, 85-89, 92-98, 103, 106, 164.)

Next, Defendant takes issue with Plaintiff's general use of statistics to support the second element of her disparate impact claim. Defendant Santander specifically argues that "general

---

[3] In general, arguments made for the first time in a reply brief are waived. *See United States v. Vitrano,* 747 F.3d 922, 925 (7th Cir. 2014); *Darif v. Holder,* 739 F.3d 329, 336 (7th Cir. 2014).

statistics are not enough alone to establish a prima facie claim for disparate impact under the ECOA." (R. 23, Def.'s Open. Brief, at 14.) There is no doubt that statistical evidence is often used to prove disparate impact claims. *See International Bhd. of Teamsters v. United States*, 431 U.S. 324, 340, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *A.B. & S. Auto Serv.*, 962 F. Supp. at 1061. At this stage of the proceedings, however, Plaintiff need not "prove" her claim, especially because she has sufficiently alleged facts that Defendant's specific policies harmed her by causing her to pay more for her interest rate and for add-ons than individuals who are not African-American women. *See, e.g., Steele v. GE Money Bank,* No. 08 C 1880, 2009 WL 393860, at *4 (N.D. Ill. Feb. 17, 2009). As the district court in *Steele* observed in the context of the defendants' arguments regarding statistical disparities, the "court declines to impose a strict fact-pleading requirement on the plaintiffs as the basis of the plaintiffs' disparate impact claim is clear, and it is supported by sufficient factual allegations to withstand a motion to dismiss." *Id.*

Last, Defendant argues that Plaintiff has failed to sufficiently allege facts connecting these statistics to Defendant Santander or her actual credit transaction. Defendant's argument misses the point because, as discussed, Plaintiff has adequately alleged the existence of a disparate impact claim without the use of statistics, although she does make factual allegations based on some statistics. *See A.B. & S. Auto Serv.*, 962 F. Supp. at 1061 ("proof of disparate impact need not be shown by statistics in every case") (citation omitted). As such, viewing the facts and all reasonable inferences in Plaintiff's favor, she has sufficiently alleged that Defendant's discretionary pricing policies result in African-American women experiencing worse credit loan outcomes when compared to the population at large. (First Am. Compl. ¶¶ 21, 22, 24.)

In sum, Plaintiff has alleged sufficient factual details stating an ECOA claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.,* 786 F.3d 510, 526 (7th Cir. 2015) ("plaintiff must include enough details about the subject-matter of the case to present a story that holds together") (citation and internal quotation marks omitted). The Court therefore denies Defendant's motion to dismiss Plaintiff's ECOA claim as alleged in Count III of the First Amended Complaint.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendant's Rule 12(b)(6) motion to dismiss.

**Dated:** February 23, 2016

                                          **ENTERED**

                                          **AMY J. ST. EVE**
                                          **United States District Court Judge**